# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00724-CV

**Texas Department of Transportation, Appellant**

**v.**

**Atanasio Banda, Appellee**

## FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
## NO. C-1-CV-07-009468, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Atanasio Banda sued appellant Texas Department of Transportation ("the Department") for injuries he sustained when the car in which he was a passenger collided with a vehicle owned by the Department and driven by its employee. A jury found the Department's employee negligent and awarded Banda damages. The trial court denied the Department's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. On appeal, the Department asserts that (1) there was legally and factually insufficient evidence to prove that the accident caused Banda's damages due to the lack of required expert-witness testimony; (2) the trial court erred in excluding evidence showing that Banda's medical provider agreed to accept less money for its services than the amount it originally billed; and (3) the trial court abused its discretion in admitting (a) Banda's medical bills, given the otherwise legally insufficient evidence of causation, (b) medical records purporting to be expert opinion testimony without first qualifying the author as

an expert, and (c) certain lay opinion testimony on causation. Concluding that expert-witness testimony was required to prove that the accident caused some of Banda's damages, we will reverse the judgment and remand the cause for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Banda was a passenger in a small pickup truck driven by Juan Antonio Cantu. While traveling on U.S. Highway 59 near the junction of Interstate 37, Cantu's vehicle "t-boned" into the side of the Department's pickup truck at approximately 35 to 40 miles per hour. Photographs of the vehicles taken after the accident show that the front of Cantu's vehicle suffered "moderate to severe" front-end damage.

Banda was taken by ambulance to a local emergency room complaining of pain in his chest and right big toe. Doctors diagnosed him with bruised ribs and a broken big toe. Banda followed up two days later with a chiropractor complaining of pain in his neck, back, toe, and chest. Although Banda testified at trial that he experienced pain in his back and neck immediately after the accident, the ambulance and emergency room records document only the complaints of pain in his chest and big toe. Banda continued to see the chiropractor regularly for about four months following his initial visit.

Banda sued Cantu and the Department asserting that the negligence of Cantu and the Department's employee caused his injuries. He settled with Cantu and proceeded to trial against the Department. At trial, Banda testified through a translator that, after the accident, "[A]ll my body was hurting. My [big toe] got broken, and my ribs were hurting, and also right here on my back I got hit." Asked if any portion of his body hit anything on the inside of the truck, Banda responded that

2

"It hit me here [indicating his chest], but you know how the impact is. It's very hard. So I don't know if it hit me there." On further questioning, he could not say for certain if his chest injury was the result of a collision with the dashboard or from the seatbelt. Banda described the impact as "strong" and said that immediately following the accident "I couldn't see at that moment and everything was hurting me." He testified that after the accident his ribs were very tender—a nine out of ten on a pain scale—and that his right foot was a seven out of ten. Banda also testified that both his neck and back also hurt after the accident, but was not asked to describe his level of pain.

Banda testified that he was taken by ambulance to a local emergency room, examined, given pain medication, and released. He stated that the pain medication he received at the hospital helped him "a little bit because I had a lot of pain." Banda next testified about his physical impairment and his four-month long treatment with the chiropractor:

Q. During the time that [the chiropractor] treated you, what type of physical activities were you having difficulty doing at that time?

A. Everything. I couldn't do anything.

Q. When you said you couldn't do anything, why couldn't you?

A. Because everything was hurting, I could barely get out of bed. And I was like that for about six months.

Q. How did it affect your sleep?

A. A lot. I couldn't sleep. I had a lot of pain.

Banda also testified that he had difficulty driving due to the special shoe his doctor prescribed to treat his broken big toe.

3

As to his pain, Banda testified that, after wearing the shoe for three months, he had no more toe pain. He testified that his side rib pain had cleared up after about a year, but that his back hurt him approximately once every week to two weeks, and that when it hurt, the pain was about a five on a ten-point scale. Banda testified that his neck pain was more frequent, usually occurring about two days a week. The front part of his chest also gave him pain about once a week. To treat his pain he took over-the-counter pain medication.

Banda testified about how his injuries affected his daily life and about his physical condition before the accident:

> Q. Are there any activities that you used to do but you have difficulty doing now as a result of these injuries?
>
> A. Well, no, I can't do anything.
>
> Q. Do you have a tendency—for instance, can you do any lifting?
>
> A. No.
>
> Q. Have you tried?
>
> A. Yes, but I can't.
>
> Q. And what happens when you try?
>
> A. I don't do anything.
>
> Q. Have you typically been pretty healthy?
>
> A. Yes.
>
> Q. Had you ever had problems with your neck before?
>
> A. Before, no.

4

Q. Had you ever had any problems with your back before this accident?

A. None.

Q. What types of problems had you ever had with your ribs before this accident?

A. None.

Q. What about your chest? Have you ever had any problems with your chest before this accident?

A. None.

Banda explained that he got short of breath and had chest pain on occasion after the accident and that he did not have that problem prior to the accident.

Banda also testified about a prior on-the-job injury to his ankle that he sustained about a year before the accident. He testified that he suffered impairment after that injury, stating that, after the injury, "I [couldn't] do anything." Banda also testified that he was not able to lift things after his ankle injury "Because I could barely walk with my foot. I was walking with a cane and I was walking with crutches." He answered "yes" to whether he "was able to get around okay" right before the car accident and said that, by then, he was walking with just a brace. Finally, Banda testified, over the Department's objection, that his difficulty in lifting at the time of trial was caused by the car accident.

The Department made two objections to Banda's documentary evidence, both of which the trial court overruled. The first concerned billing records from the chiropractor. Before trial, Banda's counsel settled the chiropractor's bill for less than the amount originally charged. The Department asserted that section 41.0105 of the civil practice and remedies code required

5

evidence of any such reduction to be presented to the jury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (West 2008) ("In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant."). Second, the Department objected to a portion of the chiropractor's medical records that contained a narrative statement purporting to opine as to the cause of Banda's injuries as expert witness testimony for which the proper foundation had not been laid.

The jury found Cantu 40% negligent and the Department 60% negligent. It awarded Banda $6,000 for past pain and mental anguish; $12,000 for future pain and mental anguish; $16,000 for past physical impairment; $32,000 for future physical impairment; and $8,412.51 for past medical expenses. As Banda had not worked for some time before the accident, he did not seek past or future lost wages. The Department moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The court denied the Department's motion and rendered judgment consistent with the jury's verdict, reducing Banda's award by the amount of Cantu's settlement and the difference between the chiropractor's billed charges and the amount Banda actually paid. The Department appeals.

## STANDARD OF REVIEW

In reviewing a jury verdict for legal sufficiency, we consider the evidence in the light most favorable to the verdict, crediting evidence favorable to the verdict if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We reverse the court's judgment only if the evidence presented at trial would not allow reasonable and fair-minded jurors to reach the finding under

review. *Id.* We will sustain a legal-sufficiency challenge if the record reveals: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. More than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions based on the evidence in the record. *Forbes, Inc. v. Granada Biosciences*, 124 S.W.3d 167, 172 (Tex. 2003).

"When reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). "The court of appeals is not a fact finder. Accordingly, the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result." *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

## DISCUSSION

In its first and third issues, the Department argues that the jury's verdict was not supported by legally and factually sufficient evidence because Banda failed to present expert-witness testimony linking his damages to the car accident. Specifically, it argues that expert testimony was required to prove (1) that Banda's neck and back injuries were caused by the accident, and (2) the likely duration of all of his injuries. Although acknowledging that he did not present expert witness

7

testimony, Banda argues that his lay testimony was sufficient to prove that his damages were caused by the car accident.

"The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). Lay testimony can, "in limited circumstances," prove "the existence and nature of certain basic conditions," given "proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions." *Id.* at 667. In the context of an automobile accident, lay testimony "establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition" can support a finding of causation, provided that such conditions

> (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents.

*Id.*

Temporal proximity between an accident and an injury does not usually, by itself, support an inference of medical causation. *Id.* Temporal proximity can support an inference of medical causation, however, for injuries of a "basic nature," including, for example, certain types of pain and bone fractures that are within a layperson's general experience and common-sense understanding as being caused by automobile accidents. *Id.* at 668. Thus, "it would be within the general experience and common knowledge of laypersons that [an automobile] accident caused [a plaintiff] to be transported to a medical care facility and to be cared for medically to some degree."

8

*Id.* at 667. Accordingly, a jury could find a causal link between a car accident and a person's "immediate post-accident condition which resulted in his being transported to an emergency room and examined in the emergency room" without needing expert testimony. *Id.* at 669. Such a conclusion

> accords with human experience, [the supreme court's] prior cases, and the law in other states where courts have held that causation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors.

*Id.* at 668.

In the present case, Banda testified that the impact was "strong" and that after the accident he felt pain in his toe, chest, back, and neck. The medical records show that he was transported by ambulance to a hospital complaining of pain in his toe and chest. He was diagnosed with a broken toe and bruised ribs. Two days later, Banda presented at the chiropractor's office complaining of pain in his neck, back, toe, and chest. He was diagnosed with a strain or sprain to his back and neck.

The Department admits that Banda's broken toe and chest injuries are the type of injuries for which causation can be supported by lay testimony in light of the nature of the accident, the temporal proximity of the injuries, and Banda's testimony that he had no injuries to his chest and toe prior to the accident. It argues, however, that his neck and back injuries are not "overt"—which we take to mean obvious and manifested immediately after the accident—and thus required expert testimony to show causation. Contrary to the Department's argument, *Guevara* does not require that injuries be "overt" for their cause to be proven by lay testimony. Although *Guevara* uses broken

9

bones and lacerations as examples of injuries that logically result from car accidents and can be supported solely by lay testimony, we believe that back and neck pain—including the kind of delayed soreness Banda had here—can also be within the experience and knowledge of laypersons as being caused by car accidents. *See id.* ("[C]ausation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors."); *see, e.g.*, *State Office of Risk Mgmt. v. Larkins*, 258 S.W.3d 686, 691 (Tex. App.—Waco 2008, no pet.) (back injuries from physical assault within common knowledge of jury); *Metropolitan Transit Auth. v. Harris County*, No. 14-06-00513-CV, 2008 WL 4354503, at *8 (Tex. App.—Houston [14th Dist.] Aug. 26, 2008, no pet.) (mem. op.) (lay testimony sufficient to establish causation for damages from injuries arising after collision with bus).

Thus, we conclude that Banda's testimony about the accident, the treatment he received, and the pain and incapacity he had immediately thereafter is legally sufficient evidence to prove that the injuries he complained of at that time were caused by the accident. Because "it would be within the general experience and common knowledge of laypersons that [an automobile] accident caused [a plaintiff] to be transported to a medical care facility and to be cared for medically to some degree," Banda's testimony supports at least part of the jury's award of past medical treatment, pain and suffering, and physical impairment. *Id.* at 667.

The probable duration of such injuries, however, is not within the general experience and common knowledge of laypersons. While a layperson's experience and knowledge can logically link Banda's injuries—and thus at least some of his initial damages—to the accident, a layperson can only speculate about how long a back or neck strain, fractured toe, or bruised ribs take to heal

10

or, in some cases, whether they are likely to heal at all. Banda's testimony alone cannot establish the extent or severity of the pain or impairment that he would, with medical probability, continue to suffer as a result of those injuries after his initial treatment phase is complete. Consequently, the jury lacked legally sufficient evidence on which to base its damage awards as to those injuries.

Banda argues, and we agree, that non-economic damages cannot be determined with mathematical precision and, accordingly, a jury is given latitude in awarding such damages. *See Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002). The evidence, however, must justify the amount awarded. *Id.* "A jury may not simply pick a number and put it in the blank, but must find an amount that 'would fairly and reasonably compensate' for the loss." *Rentech Steel, L.L.C. v. Teel*, 299 S.W.3d 155, 165 (Tex. App.—Eastland 2009, pet. dism'd) (quoting *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)). Absent the required expert testimony here, the jury had legally insufficient evidence from which to determine the proper amount of some of Banda's damages.

Concluding that expert testimony was required to establish some of Banda's damages, we sustain the Department's first and third issues. "Ordinarily, we render judgment when we sustain a no evidence issue. However, when there is some evidence of damages, but not enough to support the full amount, it is inappropriate to render judgment." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009). We have the option of suggesting a remittitur or remanding to the trial court for a new trial. *Id.* Based on the present record, we are unable to suggest an appropriate amount for a remittitur; consequently, we remand the cause to the trial court for a new trial on all issues. *See* Tex. R. App. P. 44.1(b) ("The court may

not order a separate trial solely on unliquidated damages if liability is contested."). Because we remand the cause for a new trial, we need not reach the Department's other issues.

## CONCLUSION

We reverse the trial court's judgment and remand the cause to that court for a new trial.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Remanded

Filed:   December 22, 2010