TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00134-CV






Alexander Kosaka, Appellant


v.


Hook and Anchor Marine and Watersports, LLC, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT

NO. B-09-0641-C, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellant Alexander Kosaka brought suit against appellee Hook and Anchor Marine
and Watersports, LLC ("Hook & Anchor"), alleging that one of its employee's negligence caused
an automobile accident in which Kosaka was injured. After allowing a settlement credit that
exceeded the total amount of damages awarded by the jury, the trial court rendered a take-nothing
judgment against Kosaka. On appeal, Kosaka challenges an evidentiary ruling by the trial court and
the jury's zero-damages findings for past medical expenses, past physical impairment, and past and
future disfigurement. For the reasons that follow, we affirm the judgment.


BACKGROUND


 Kosaka and Jayme Lynn Jones, an employee of Hook & Anchor, were involved in
an automobile accident on October 21, 2008. Jones was running a work-related errand for Hook
& Anchor and failed to yield the right of way to the vehicle operated by Kosaka. Kosaka sustained
injuries as a result of the accident. His injuries included broken ribs, torn ligaments in one of his
knees, a torn disc and a "pars defect at L5-S1." (1) His medical treatment after the accident included
surgery to repair his anterior cruciate ligament (ACL).

 Kosaka brought suit for the personal injuries that he sustained from the accident
against Jones, Hook & Anchor, and another company that owned the vehicle that Jones was driving
at the time of the accident. After Kosaka settled his claims against the other company and Jones for
$320,000, his remaining claims against Hook & Anchor proceeded to a jury trial in October 2010. 
Hook & Anchor's defenses included contributory negligence, but the primary dispute between the
parties was the appropriate award of damages for the injuries sustained by Kosaka as a result of the
accident. Kosaka sought damages for past and future medical expenses, pain and mental anguish,
loss of earning capacity, disfigurement, and physical impairment. The witnesses included Kosaka,
his sister-in-law and brother, his treating neurosurgeon and orthopedic surgeon, and vocational and
economics experts.

 At trial, Kosaka stipulated that $44,733.69 was the amount that his health care
providers would accept as full payment for the services rendered to him up to the time of trial. This
amount included the medical expenses to surgically repair his ACL. He also presented evidence to
support his request for an award of $150,000 for future medical expenses. Evidence showed that
Kosaka probably needed to have two additional surgeries: a posterior cruciate ligament (PCL) repair
and an "anterior and posterior lumbar fusion." As to his loss of earning capacity, Kosaka presented
evidence that: (i) he lost his hourly job in which he earned $9.15 an hour because he "had been out
too long" after the accident, (ii) he was unemployed for several months after he lost his job, and
(iii) after he was able to obtain employment, it was part-time, minimum-wage positions. He
remained employed on a part-time basis at the time of trial. Kosaka also presented evidence about
how the accident has affected him, including his pain and physical limitations because of his injuries. 
He testified that it was "[h]ard to bend" and that "I'm still a little moveable, but not as quick as
I used to be." His sister-in-law and brother also testified that he was physically "limited" after
the accident.

 At the close of the evidence, the trial court submitted the case to the jury. The jury
found that the negligence of both Jones and Kosaka proximately caused the accident and that
Kosaka's percentage of responsibility was 10% and Jones's was 90%. The jury found amounts
which "would fairly and reasonably compensate Alexander Kosaka for his injuries, if any, that
resulted from the occurrence in question" as follows:


 Physical pain and mental anguish (past) $ 5,000

 Physical pain and mental anguish (future) $10,000

 Loss of earning capacity (past) $20,534

 Loss of earning capacity (future) $84,613

 Physical Impairment (future) $10,000

 Medical care expenses (future) $80,000



The jury also made zero-damages findings for disfigurement in the past and future, physical
impairment in the past, and medical care expenses incurred in the past.

 Because the settlement credit of $320,000 exceeded $189,132.30--the total amount
awarded by the jury reduced by 10%--the trial court rendered a take-nothing judgment
against Kosaka. Kosaka filed a motion for new trial which was denied after a hearing. This
appeal followed.


ANALYSIS


 On appeal, Kosaka requests that this Court reverse the trial court and remand for a
new trial and raises three issues to support his requested relief. He contends that: (i) the trial court's
admission of evidence of "settlement monies" received by Kosaka before trial resulted in an
improper verdict; (ii) the jury improperly awarded zero for his past medical expenses; and (iii) the
jury improperly awarded zero for physical impairment sustained in the past and disfigurement in the
past and future.


Evidence of "settlement monies"


 In his first issue, Kosaka challenges the trial court's admission of evidence
of "settlement monies." We review a trial court's decision to admit evidence under the
abuse-of-discretion standard. In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses
its discretion when it acts unreasonably or "without reference to any guiding rules and principles." 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 Kosaka contends that a line of questioning by defense counsel to Kosaka allowed the
jury to infer that he had received significant amounts of money in settlement before the trial. Kosaka
urges that the trial court erred by allowing the questioning based on rule 408 of the rules of evidence
and the collateral source rule. See Tex. R. Evid. 408; Brown v. American Transfer & Storage Co.,
601 S.W.2d 931, 934-95 (Tex. 1980) (discussing collateral source rule). Rule 408 generally
prohibits introducing evidence of compromise and settlement. Tex. R. Evid. 408. The collateral
source rule generally prohibits a defendant from introducing evidence of payments from other
sources for the plaintiff's injuries. Taylor v. American Fabritech, Inc., 132 S.W.3d 613, 626 (Tex.
App.--Houston [14th Dist.] 2004, pet. denied).

 The complained-of questioning occurred during cross examination of Kosaka. 
Defense counsel questioned Kosaka about his testimony on direct as to his ability to pay for future
medical care for his injuries and Kosaka's counsel objected as follows:


 [Defense Counsel]: Mr. Kosaka, you told the jury about your inability to pay bills
at your brother's house and also you have told them that you
were unable to get the surgeries performed that you're saying
that you're needing. Do you remember that testimony?


 [Kosaka]: What I meant by those things, these were, I think, after the
accident, you know. There were--what I meant were after the
accident. I had no job, you know, nothing. I couldn't do--I
couldn't get nothing done.


 . . .


 [Defense Counsel]: Have you scheduled those surgeries, back surgery if
that's what you think you need, and your PCL, your other
knee surgery?


 [Kosaka]: No. These--those--those things were mentioned to me. I
told the doctors that--at that time that I couldn't afford those
things because that's right after the accident.


 [Defense Counsel]: Okay. What my question is, have you scheduled surgeries on
your knee and your back so that you can get feeling better and
get back working full-time and better job?

 

 [Kosaka]: Yeah. Well, I could have scheduled them at that time because
I didn't have the money to pay for them and those things. (sic)

 

 [Defense Counsel]: That's not my question. Have you rescheduled the surgery
now?

 

 [Kosaka]: No. Now, no.

 

 [Defense Counsel]: You have the money to pay for those surgeries now, do
you not?


 [Plaintiff Counsel]: Judge, I'll object for the record on grounds of relevance and
collateral source.

 

 The Court: To the question as asked, I will deny the objection.


 . . .


 [Defense Counsel]: My question is, do you have the money now to pay the
surgeries that you say you need and told the jury that you need
to have?

 

 [Kosaka]: Do I have the money now?

 

 [Defense Counsel]: Yes, sir.

 

 [Kosaka]: Not quite what--the money of everything to get it all done.

 

 [Defense Counsel]: Well, how much money do you believe it's going to take for
you to schedule those surgeries?

 

 [Kosaka]: I know for my knee surgery, we don't know yet what the
rounding of that one yet, what it's going to cost.

 

 [Defense Counsel]: Well, it's been two years since the accident. What's the
problem with knowing those numbers that you're going to--


 [Kosaka]: I'm having trouble seeing these doctors to know
these--these--these numbers, because those time when I
didn't have the money. I can't go and keep seeing them. I
can't afford to be seeing doctors all the time. MRIs
where--I'm supposed to have done, I couldn't have it done
because I didn't have the money to have it done, at those time.

 

 [Defense Counsel]: But you do have the money now to do those things?

 

 [Kosaka]: I have the money now, but not--not what I need to do.


Defense counsel continued this line of questioning with questions about the specific medical
procedures that Kosaka anticipated having done, their estimated costs, and whether Kosaka had
enough money to pay for the procedures. Kosaka's counsel objected on other grounds to a few
questions, but he did not raise the collateral source rule or a rule 408 objection. (2)

 As to the objected-to question stated above, Kosaka's counsel did not raise rule 408
as a ground for his objection and, therefore, has failed to preserve error based upon this rule. See
Tex. R. App. P. 33.1; Bay Area Healthcare Grp., Ltd. v. McShane, 239 S.W.3d 231, 235 (Tex. 2007)
("To preserve error for appellate review, the complaining party must timely and specifically object
to the evidence and obtain a ruling."). Kosaka's counsel raised "collateral source" as a basis for the
objection, but the question did not ask Kosaka to reveal the source of any funds that he had available
to pay for medical procedures going forward. The question asked whether he had funds available
or not. We cannot conclude then that the trial court abused its discretion by overruling the objection
and allowing Kosaka to answer this question.

 As to Kosaka's global challenge to this line of questioning, he did not preserve his
appellate arguments as to rule 408 or the collateral source rule. Tex. R. App. P. 33.1; McShane,
239 S.W.3d at 235. But, even if he had, we would conclude that the trial court did not abuse its
discretion by allowing the questioning. Kosaka was not asked, and no evidence was admitted that
showed that he settled with other defendants before trial or the amount of the settlement.

 Kosaka also raised the issue of his ability to pay on direct examination. He testified
that he did not complete medical treatments for his injuries because he "just couldn't afford it" and
that "ever since I got let go . . . , my insurance and everything stopped." The defense's questions
challenging Kosaka's stated reason on direct for the delay in treatment--inability to pay--then were
relevant for impeachment purposes. See Tex. R. Evid. 408 (exclusion of evidence not required
"when the evidence is offered for another purpose"); Macias v. Ramos, 917 S.W.2d 371, 374 (Tex.
App.--San Antonio 1996, no writ) (discussing exception to collateral source rule when a plaintiff
raises inability to pay bills). Further, why Kosaka delayed medical treatments, including the two
additional surgeries that he contended that he needed until the time of trial--two years after the
accident--was contested and relevant as to the appropriate amount of several categories of damages. (3) 
We overrule Kosaka's first issue.


Zero-Damages Finding for Past Medical Expenses


 In his second issue, Kosaka argues that the jury improperly awarded zero damages
for his past medical expenses and that the jury's determination as to this category of damages is
grounds for a new trial.

 "In addition to any other limitation under law, recovery of medical or health care
expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." 
Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (West 2008); see Haygood v. De Escabedo,
356 S.W.3d 390, 399 (Tex. 2011) (holding that "only evidence of recoverable medical expenses is
admissible at trial"). Kosaka stipulated that $44,733.69 was the amount that his health care
providers would accept as full payment for the medical services rendered to him up to the time of
trial. Kosaka's recovery for past medical expenses then was limited by his stipulation to
$44,733.69--"the amount actually paid or incurred by or on [his] behalf." See Tex. Civ. Prac.
& Rem. Code Ann. § 41.0105.

 Assuming without deciding that the award for past medical expenses should have
been $44,733.69, we conclude that Kosaka has failed to show that the jury's zero-damages finding
supports reversing the trial court's judgment for a new trial. See Tex. R. App. P. 44.1 (judgment
may not be reversed on appeal on the ground that the trial court made an error of law
unless the complained-of error probably caused the rendition of an improper judgment). The
amount of settlement credit, $320,000, would still have exceeded the jury's award even if the
amount of $44,733.69 was included in the amounts awarded by the jury. See Galle, Inc. v. Pool,
262 S.W.3d 564, 573 (Tex. App.--Austin 2008, pet. denied) (noting that take-nothing judgment
proper when settlement credit exceeds amount of damages award). On this basis, we overrule
Kosaka's second issue. (4)


Zero-Damages Findings for Physical Impairment and Disfigurement


 In his third issue, Kosaka argues that this Court should reverse the trial court's
judgment and remand for a new trial because the jury improperly awarded zero damages for physical
impairment sustained in the past and disfigurement in the past and future. We construe Kosaka's
third issue as a challenge to the factual sufficiency of the evidence to support the jury's zero-damages
findings as to these categories of damages. (5)


 i) Standard of Review


 Disfigurement, physical impairment, and mental anguish are overlapping categories
of damages. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 775 (Tex. 2003). Reviewing
the factual sufficiency of the evidence for overlapping categories, we first "determine if the evidence
unique to each category is factually sufficient" when the appellant, as is the case here, challenges
"the jury's failure to find greater damages in more than one overlapping category." Id. If the
evidence unique to a category is not sufficient, we "consider all the overlapping evidence, together
with the evidence unique to each category, to determine if the total amount awarded in the
overlapping categories is factually sufficient." Id. Because Kosaka bore the burden to prove his
damages, we may set aside the challenged zero-damages findings for factual insufficiency only if
they are so contrary to "the great weight and preponderance of the evidence as to be manifestly
unjust, shock the conscience, or clearly demonstrate bias." See id. at 775.

 We are also mindful that the jury is given considerable discretion and latitude in its
findings of personal injury damages. Weidner v. Sanchez, 14 S.W.3d 353, 372 (Tex. App.--Houston
[14th Dist.] 2000, no pet.); see also HCRA of Tex., Inc. v. Johnston, 178 S.W.3d 861, 871 (Tex.
App.--Fort Worth 2005, no pet.) ( "The process of awarding damages for amorphous, discretionary
injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury
is a subjective, unliquidated, nonpecuniary loss."(citing Dollison v. Hayes, 79 S.W.3d 246, 249 (Tex.
App.--Texarkana 2002, no pet.))). Further, we may not substitute our judgment for the jury's. 
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998); see also McGalliard
v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986) (trier of fact may believe one witness and disbelieve
others, may resolve inconsistencies in the testimony of any witness, and "is afforded considerable
discretion in evaluating opinion testimony on the issue of damages").


 ii) Damages for Disfigurement in the Past and Future


 "Disfigurement has been defined as that which impairs the appearance of a person,
or that which renders one's appearance unsightly, misshapen, imperfect, or deformed in some
manner." Enright v. Goodman Distrib., Inc., 330 S.W.3d 392, 402 (Tex. App.--Houston [14th
Dist.] 2010, no pet.) (citing Figueroa v. Davis, 318 S.W.3d 53, 64 (Tex. App.--Houston [1st Dist.]
2010, no pet.)).

 Kosaka points to the "voluminous evidence" in the record to support his challenge
to the jury's zero-damages findings, but he fails to point to specific evidence that would support a
finding that he was disfigured by the 2008 accident or that he would be disfigured in the future. Our
review of the record similarly did not locate evidence to support a finding that Kosaka was disfigured
by the accident or that he would be disfigured in the future. Kosaka pulled up his pants leg to show
the jury a knee brace that he wore, but there was no evidence to support a finding that the brace made
his appearance "unsightly" or otherwise disfigured. As to damages for disfigurement in the future,
the evidence showed that he may have two additional surgeries, but this evidence standing alone
does not support reversing the trial court's judgment. See Belford v. Walsh, No. 14-09-00825-CV,
2011 Tex. App. LEXIS 6179, at *20-22 (Tex. App.--Houston [14th Dist.] Aug. 9, 2011, no pet.)
(mem. op.) (upholding jury's finding of zero damages for past and future disfigurement and rejecting
argument that proof of surgery is proof of disfigurement because surgery necessarily leaves scars).

 On this record, we cannot say that the jury's zero-damages findings for disfigurement
in the past and future were so against the great weight and preponderance of the evidence as to be
"manifestly unjust, shock the conscience, or clearly demonstrate bias." See Jackson, 116 S.W.3d
at 775. We therefore conclude that the evidence was factually sufficient to support these findings.


 iii) Damages for Physical Impairment in the Past


 Physical impairment damages compensate for the loss of "former lifestyle." Enright,
330 S.W.3d at 402; Patlyek v. Brittain, 149 S.W.3d 781, 785 (Tex. App.--Austin 2004, pet. denied). 
To recover damages for physical impairment in the past, Kosaka had to prove "that (1) he incurred
injuries that are distinct from, or extend beyond, injuries compensable through other damage
elements; and (2) these distinct injuries have had a 'substantial' effect." Enright, 330 S.W.3d at 402
(citing Patlyek, 149 S.W.3d at 786); see also Kroger Co. v. Brown, 267 S.W.3d 320, 324 (Tex.
App.--Houston [14th Dist.] 2008, no pet.) (stating "'[p]hysical impairment' encompasses loss of
the injured party's former lifestyle, the effect of which must be substantial and extend beyond any
pain, suffering, mental anguish, lost wages, or diminished earning capacity"); Dollison, 79 S.W.3d
at 253 ("Physical impairment is an element of damages that extends beyond loss of earning capacity
and beyond any pain and suffering, to the extent that it produces a separate loss that is substantial
or extremely disabling.").

 Like his argument concerning damages for disfigurement, Kosaka points to the
"voluminous evidence" in the record to support his contention that the jury improperly awarded zero
damages for physical impairment sustained in the past, but he has failed to point to specific
evidence--and we have found none--that would support reversing the trial court's judgment. See
Enright, 330 S.W.3d at 402. Although there was evidence that he was "limited" physically because
of his injuries, the jury was instructed not to compensate him twice for the same loss and awarded
him the amounts of $5,000 for physical pain and mental anguish sustained in the past and $20,534
for loss of earning capacity sustained in the past. See Rentech Steel, L.L.C. v. Teel, 299 S.W.3d 155,
166 (Tex. App.--Eastland 2009, pet. dism'd) (damages for physical impairment "encompass the loss
of enjoyment of life, the effect of which must be substantial and extend beyond any pain, suffering,
mental anguish, lost wages, or diminished earning capacity").

 On this record, we cannot say that the jury's zero-damages finding for physical
impairment sustained in the past was so against the great weight and preponderance of the evidence
as to be "manifestly unjust, shock the conscience, or clearly demonstrate bias." See Jackson,
116 S.W.3d at 775. We therefore conclude that the evidence was factually sufficient to support this
finding and overrule Kosaka's third issue.


CONCLUSION


 For these reasons, we affirm the trial court's judgment.


 __________________________________________

 Melissa Goodwin, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: November 8, 2012

1. One of the doctors testified that "a pars defect is a kind of a traumatic event in which the
joints at the affected level fracture."
2. He objected to one question as "asked and answered." He also objected to other questions
on the ground that "there hasn't been any evidence or testimony about the actual cost of the PCL or
back surgery."
3. For example, whether he would have the surgeries after the trial was relevant to his request
for medical expenses in the future and whether the surgeries were necessary and the scope of his
recovery assuming that he had the surgeries were relevant to his request for loss of earning capacity
in the future. Kosaka was 36 years old at the time of the trial, and he sought loss of earning capacity
for approximately 30 years based upon his injuries. But Kosaka also testified that, once he had his
surgeries, "It will get me where I need to get me to feel better and everything," and he answered
"Yes" when asked, "And once [the physicians] finish with what they need, you think you will be
back up running full speed?"
4. In the section of his brief entitled "Summary of Argument," Kosaka also argues that "the
jury improperly reduced the amount of future [medical expenses] from an amount in excess of
$150,000.00 to an amount of $80,000.00." He fails to cite authorities or the record for this
contention and, therefore, has waived it. See Tex. R. App. P. 38.1(i) (appellant's brief must contain
"appropriate citations to authorities and record"); Mayhew v. Dealey, 143 S.W.3d 356, 368 (Tex.
App.--Dallas 2004, pet. denied) (noting error "waived for inadequate briefing" when brief did
not contain a clear and concise argument for the contention made with appropriate citations to
authorities and the record); Jin v. PNC Bank, No. 03-10-00392-CV, 2011 Tex. App. LEXIS 1751,
at *8 (Tex. App.--Austin Mar. 9, 2011, pet. denied) (mem. op.) (finding argument waived for
inadequate briefing).
5. Hook & Anchor also argues that Kosaka's briefing as to his third issue fails to comport
with the requirements of rule 38. See Tex. R. App. P. 38.1(i); Dealey, 143 S.W.3d at 368. Because
we conclude that the evidence was factually sufficient to support the jury's findings, we need not
address this argument. See Tex. R. App. P. 47.1.