TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-03-00641-CV





Dwayne Patlyek
, Appellant



v.



Luther Brittain, Appellee





FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY


NO. 6802-C, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING





O P I N I O N




 Our opinion and judgment issued on June 10, 2004 are withdrawn, and the following
opinion is substituted.

 This is a personal injury case whose appellate issues center on a jury submission
regarding past physical impairment. A jury returned a verdict in favor of Dwayne Patlyek for
$15,683.25 against Luther Brittain for personal injuries sustained in a motor vehicle accident,
including a finding of $6,000 for past physical impairment. The trial court granted a motion to
disregard the physical impairment finding, concluding there was no evidence to support it. Patlyek
appeals this ruling. Brittian brings a cross-point urging that the trial court erred in submitting past
physical impairment because there was no evidence of it and because Patlyek requested the
submission orally, not in writing, after the charge conference concluded. We reverse the trial court's
judgment, reinstate the jury's verdict, and remand for recalculation of interest. 

BACKGROUND


 This case arises from an automobile accident during the morning of April 11, 2001. 
As Patlyek was turning right at a stop light, a truck driven by Brittain hit him from behind, knocking
Patlyek's vehicle out of the intersection, off the road, and up over a large pile of dirt beside the road. 
Patlyek compared the experience to an unexpected bull ride. He remembered feeling a tingling
sensation in his hand and fingers, but assumed this to be merely a temporary response to the jolt he
suffered. He refused medical treatment at the scene.

 Patlyek testified that he began experiencing stiffness as evening approached on the
day of the accident. On the following day, he went to see a chiropractor, complaining of burning in
the back of his neck and left side and sharp pain in his shoulder and elbow. He experienced pain
when lifting, coughing, sitting, turning his head, or lying down. The chiropractor treated him with
adjustments, massages, and exercises. He continued to see the chiropractor for about a month and
a half. 

 Patlyek's pain and discomfort also caused him to lose sleep. He experienced
sleepless nights on a weekly basis in May and June. Patlyek also recounted that he experienced a
lack of mobility in his neck that prevented him from turning his head to the left quickly or
completely. He also complained of weakness, tingling, and pain in his shoulder, arm, and neck that
impeded his ability to work. Patlyek runs a one-person subcontracting business in which he installs
utility lines and septic systems. The work is labor-intensive and involves excavation; much of his
work is done with a jackhammer and rock saw. Patlyek testified that he enjoyed the physical nature
of the work. However, in the immediate aftermath of the accident, Patlyek tried to work half days
but "just couldn't do it" and was taken off work by the chiropractor for a few days. He then
attempted to ease back into his work but found it necessary to hire additional help to keep up with
business demands, as well as rent heavy equipment so the new help could handle the work Patlyek
had previously accomplished alone.

 Patlyek testified that he gradually "started feeling better and better" over the summer
and early fall to the point that, when he visited a doctor for treatment of poison ivy in early October,
he did not complain of any symptoms. He indicated his pain had largely subsided, he had only one
or two sleepless nights during September or October, and he had begun to take on more work,
including trading off jackhammer work with his employee. However, "going into full swing" in his
work later that month, Patlyek felt his earlier symptoms return and "the whole thing started over
again." He went to see his family doctor who prescribed physical therapy. Patlyek testified that his
symptoms were gone by December 2003, except that "I couldn't turn my head to the left quickly or
completely even past December several months."

 At the charge conference, Patlyek sought submission of past medical expenses, past
physical pain and mental anguish, past lost wages or earning capacity, and the cost of equipment
rental as elements of damages. He did not seek any future damages. While submitting medical
expenses, physical pain and mental anguish, the court refused to submit lost wages or earning
capacity or equipment rental costs. It concluded that Patlyek could not recover equipment rental as
an element of damages, and that lost earning capacity had not been properly pleaded. Moreover,
although Patlyek had introduced evidence of invoices for equipment rental and wages paid to his
employees, he had not quantified any lost wages. Before the charge was read to the jury, Patlyek
orally requested the submission of past physical impairment as an element of damages. The trial
court granted the request over Brittain's objection that no evidence supported the submission of
physical impairment.

 The jury found Brittain 100 percent liable for the accident and awarded Patlyek
$1,904 for past medical expenses, $3,000 for past pain and mental anguish, and $6,000 for past
physical impairment. The court rendered judgment on the jury's verdict on July 21, 2003. Brittain
filed a motion for new trial and to disregard the jury finding on past physical impairment. Brittain
argued that no evidence supported the submission of past physical impairment and that Patlyek
waived the issue by failing to request it at the charge conference. On September 22, the court
granted the motion to disregard and signed a second judgment omitting the $6,000 for past physical
impairment. This appeal ensued.

 Patlyek argues that legally sufficient evidence supports the submission of physical
impairment to the jury. Brittain brings a cross-point urging that the trial court erred in submitting
past physical impairment because there was no evidence of it and because Patlyek requested the
submission orally after the charge conference had concluded.


DISCUSSION


Evidence of past physical impairment

 Standard of review

 Patlyek contends that the trial court erred in disregarding the jury's award of physical
impairment damages, and Brittain contends by cross-point that no evidence supported the submission
of that issue. As to both issues, we apply the "no evidence" or legal sufficiency standard of review. 
There is "no evidence" or legally insufficient evidence when (a) there is a complete absence of
evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. 
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960). More
than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "'rises to
a level that would enable reasonable and fair-minded people to differ in their conclusions.'" Havner,
953 S.W.2d at 711 (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995);
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). If the evidence is so weak as
to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no
evidence. Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 183 (Tex. 1995). (1)

 Past physical impairment

 "Physical impairment" encompasses the loss of the injured party's former lifestyle. 
Ramirez v. Fifth Club, Inc., No. 03-03-00241-CV, 2004 Tex. App. LEXIS 3751, at *44 (Tex.
App.--Austin Apr. 29, 2004, no pet. h.); Dawson v. Briggs, 107 S.W.3d 739, 752 (Tex. App.--Fort
Worth 2003, no pet.). It can encompass both economic and non-economic losses, and can include
hedonic damages, or "loss of enjoyment of life." Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d
757, 764-65, 772 (Tex. 2003); see also Ramirez, 2004 Tex. App. LEXIS 3751, at *44 (noting that
physical impairment is "sometimes called loss of enjoyment of life"). To prevent the risk of double
recovery, Texas courts have long struggled to limit recovery of physical impairment damages solely
to losses other than those being compensated through other damage elements. Thus, this Court, like
many of our sister courts of appeals, has required a plaintiff to "prove that the effect of his physical
impairment extends beyond any impediment to his earning capacity and beyond any pain and
suffering and mental anguish to the extent that it produces a separate and distinct loss that is
substantial and for which he should be compensated." Ramirez, 2004 Tex. App. LEXIS 3751, at
*44; see also Jackson, 116 S.W.3d at 765 (citing examples). In Jackson, the Texas Supreme Court
recently approved a more specific and restrictive version of this standard when providing a model
jury instruction for use in submitting physical impairment: "the effect of any physical impairment
must be substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished
earning capacity." 116 S.W.3d at 772. We apply the supreme court's articulation of the standard
as an authoritative statement of the substantive law underlying our "no evidence" inquiry.

 Thus, to recover damages for physical impairment, Patlyek must have adduced more
than a scintilla of evidence that (1) he incurred injuries that are distinct from, or extend beyond,
injuries compensable as pain and suffering, loss of earning capacity, or other damage elements; (2) and
(2) these distinct injuries have had a "substantial" effect.

 Patlyek asserts that the following comprise evidence of past physical impairment:



 Patlyek's pain caused him to visit a chiropractor on the day after the accident. 
At the time, he was experiencing pain when lifting, coughing, sitting, turning his
head, or lying down.

 Due to his pain, Patlyek experienced problems sleeping. He experienced
sleepless nights on a weekly basis in May and June. This problem gradually
dissipated until Patlyek reaggravated his injuries in October.

 For approximately six to eight months after the accident, Patlyek experienced
weakness, tingling, and pain in his shoulder and arm that prevented him from
fully performing his job the way he could prior to the accident. Patlyek had to
take off work for a few days after the accident, and had to limit his activities to
varying degrees until he fully recovered. Patlyek sought both economic
damages for these losses (the labor and equipment expenses he incurred while
trying to keep up his business operations) and non-economic damages (the loss
of the ability to participate in an activity he found enjoyable; Patlyek testified
that he enjoyed the physical nature of his job).

 Apart from the pain he was experiencing, and even after it had subsided, Patlyek
testified that he experienced restricted mobility in his neck that prevented him
from turning his head left completely or quickly. This limitation continued
"even past December several months." Patlyek coped with the problem at times
by "constantly" and daily trying to stretch his neck so his head could turn "all
of the way over there."



Patlyek does not seek damages for any future physical impairment, (3) nor does he claim that his
injuries are permanent in nature. Although Texas intermediate appellate courts have been
inconsistent on the subject, the supreme court in Jackson appeared to acknowledge that temporary
injuries could give rise to physical impairment. Id. at 765-66.

 We first consider whether the losses Patlyek cites are distinct from losses
compensable under other damage categories. Attempts by appellate courts to classify losses as
within physical impairment or other damage categories present the risk that the reviewing court will
inappropriately substitute its judgment for that of the jury in evaluating in which category, if any,
plaintiffs should be compensated. See id. at 773. This Court, like many of our sister courts, has
tended to avoid such intrusions by focusing on whether the injuries have impeded a plaintiff's ability
to engage in specific non-work related activities, such as sports, hobbies, or recreational activities. 
Plainview Motels, Inc. v. Reynolds, 127 S.W.3d 21, 38 (Tex. App.--Tyler 2003, pet. denied)
("[p]hysical impairment encompasses the inability to participate in sports, hobbies or other
recreational activities"); see also Jackson, 116 S.W.3d at 773 (implying that plaintiff's inability to
enjoy recreational activities during recuperation from injuries might be compensable as past physical
impairment). By focusing on actual impediments to the plaintiffs' activities, a reviewing court can
distinguish losses comprising physical impairment from the pain, suffering, inconvenience, or
distress compensable in and of themselves through pain and suffering or mental anguish damages. 
By focusing on activities unrelated to work, a reviewing court can distinguish losses comprising
physical impairment from those comprising lost wages or earning capacity.

 To make these determinations, Texas courts have looked to whether (1) impediments
to the plaintiff's non-work related activities are obvious from the injury itself; or (2) the plaintiff
produces some evidence of specific non-work related tasks or activities he can no longer perform. 
Reynolds, 127 S.W.3d at 38-39; Sharm, Inc. v. Martinez, 900 S.W.2d 777, 784-85 (Tex.
App.--Corpus Christi 1995, no writ). Examples of injuries or limitations that have been held to be
legally sufficient evidence of physical impairment include difficulty eating and communicating with
others, Ramirez, 2004 Tex. App. LEXIS 3751, at *44; continuing inability to sleep due to sharp
pains, plus inability to run, bicycle, participate in triathlons, and play with children, Reynolds, 127
S.W.3d at 38-39; past inability to walk and future difficulties in running, standing, and climbing,
Schindler Elevator Corp. v. Anderson, 78 S.W.3d 392, 412-13 (Tex. App.--Houston [14th Dist.]
2001, pet. abated); inability to ascend or descend stairs or kneel and difficulty in standing for long
periods of time, Missouri Pac. R. Co. v. Robertson, 25 S.W.3d 251, 259 (Tex. App.--Beaumont
2000, no pet.); loss of seventy-five percent of strength in left arm, which subsequently contributed
to plaintiff's falling, breaking her leg, and being confined to a wheelchair, Martinez, 900 S.W.2d at
784; and difficulties performing yard work, car maintenance, and playing racquetball. Southern Pac.
Transp. Co. v. Harlow, 729 S.W.2d 946, 950-51 (Tex. App.--Corpus Christi 1987), writ denied sub.
nom., Port Terminal R.R. Ass'n v. Harlow, 745 S.W.2d 320 (Tex. 1988).

 Applying these standards, most of the losses Patlyek cites as evidence of physical
impairment appear indistinguishable from pain and suffering, mental anguish, or lost earnings
damages. (4) But, under our standard of review, we believe that evidence regarding Patlyek's inability
to turn his head to the left constitutes some evidence of physical impairment. Viewing the evidence
in the light most favorable to Patlyek, as we must, he was unable to turn his head to the left
completely or quickly until several months after December, when he had otherwise fully recovered
from his injuries. This limitation on his mobility, moreover, was independent of the pain and
weakness Patlyek experienced. Being unable to rotate one's head completely or normally would
have an obvious impact on day-to-day activities, such as driving a car, responding to one's name
when called, or any recreational activity involving movement of one's head. It is thus similar to
impediments of such elemental activities as walking, eating, kneeling or standing that have been held
to constitute physical impairment. See Smith, 66 S.W.3d at 331-32 (permanent inability to bend or
twist at the waist, along with inability to sit for prolonged periods or to lift more than twenty pounds,
was legally sufficient evidence of physical impairment).

 We also believe that this evidence satisfies the second requirement for recovering
physical impairment damages, that the distinct loss be "substantial." Patlyek testified that his
inability to rotate his head lingered for several months after the eight months in which he otherwise
recovered from the accident. While Patlyek's injuries are perhaps not as dramatic as those involved
in the cases discussed above, awards for physical impairment have been held not to always require
egregious injuries, and Texas courts have awarded such damages based on injuries less severe than
Patlyek's. See Robinson v. Minick, 755 S.W.2d 890, 894 (Tex. App.--Houston [1st Dist.] 1988, writ
dism'd). Absent more specific guidance from the Texas Supreme Court regarding the meaning of
the requirement that physical impairment damages be "substantial," we are reluctant to take the
determination of physical impairment damages from the jury on that basis alone.

 We accordingly hold that legally sufficient evidence supported the jury's award of
physical impairment damages, sustain Patlyek's issue, and overrule Brittain's cross-point to the
extent it urges an evidentiary complaint. (5)


Cross-point

 Standard of review

 In his cross-point, Brittain complains of the trial court's submission of the past
physical impairment element to the jury. We review alleged error in a jury charge under an abuse
of discretion standard. Texas Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990);
Ganesan v. Vallabhaneni, 96 S.W.3d 345, 350 (Tex. App.--Austin 2002, pet. denied). To obtain
a reversal, an appellant must establish that the trial court acted arbitrarily, unreasonably, or without
reference to the guiding legal rules or principles. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985); Ganesan, 96 S.W.3d at 350. Even if error exists, the appellant
must show that considering the totality of the circumstances the error amounted to such a denial of
rights as was reasonably calculated to cause and probably did cause the rendition of an improper
judgment. Tex. R. App. P. 44.1(a)(1); Ganesan, 96 S.W.3d at 350.


 Submission of physical impairment

 Brittain's cross-point complains of charge error on the grounds that: (1) there was no
evidence to authorize the submission, and (2) Patlyek violated Texas Rule of Civil Procedure 273
in not submitting the requested element of damage in writing during the charge conference. We have
already held that there was some evidence to support the submission of this element of damage, so
we need address only Brittain's second argument.

 The charge conference was conducted during several breaks in the trial proceedings
when the jury was outside the courtroom. As is common with broad-form submissions, both sides
had previously filed full jury charges instead of individual questions and instructions. An informal
charge conference began on July 8, and because Brittain's attorney had a more comprehensive
proposed charge on a computer diskette, his was used as the court's working copy. Both parties
suggested and argued additions and objections to that charge on July 8. The court consulted the
Texas Pattern Jury Charges and requested that the parties finish reviewing the proposed charge and 
do legal research on several points overnight. The next day, the parties and the judge continued the
discussion of the charge and case law. The court ruled in Brittain's favor on most issues, including
denying Patlyek's request for damage elements for lost earning capacity, equipment rental, and 
wages for his employees. After a lunch break, Patlyek's lawyer noticed that the damages question
did not contain a blank for past physical impairment as a component of the damages question. He
orally requested that the court add that element of damage to the charge. (6) Brittain vigorously
objected on the basis that: (1) the charge conference was completed the previous day so the request
was untimely; (2) Patlyek did not submit his requested issue in writing; (3) the past physical
impairment request was an attempt to obtain the same damages that had been denied in connection
with lost earning capacity issue; and (4) there was no evidence to support the submission. The court
granted Patlyek's requested issue.

 The cases cited by Brittain involved situations where the court refused to submit an
orally-requested question, instruction, or definition and the complaint on appeal was about the
refusal to submit. See, e.g., Woods v. Crane Carrier Co., 693 S.W.2d 377, 379 (Tex. 1985); Gulf
Oil Corp. v. Williams, 642 S.W.2d 270, 273 (Tex. App.--Texarkana 1982, no writ). Here, the court
submitted the missing element of damage, so the issue of preserving the orally-requested element
itself is not a concern. We overrule Brittain's cross-point.


CONCLUSION


 We reverse the judgment of the county court at law disregarding the jury's verdict
awarding past physical impairment damages, overrule Brittain's cross-point, and render judgment
on the verdict that Patlyek receive $6,000 in past physical impairment damages. We remand for
recalculation of interest.



 

 Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Reversed and Remanded

Filed: July 15, 2004
1. Our starting point for determining the legal sufficiency of evidence supporting a jury
finding is generally the charge and instructions actually submitted to the jury. Osterberg v. Peca,
12 S.W.3d 31, 55 (Tex. 2000); cf. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 762
(Tex. 2003) ("Before a court can properly conduct a factual sufficiency review, it must first have a
clear understanding of the evidence that is pertinent to its inquiry. The starting point generally is the
charge and instructions to the jury."). In this case, "physical impairment" was not defined in the
charge, nor was the jury instructed to avoid duplicative awards of multiple categories of damages
for the same losses. Brittain did not request these instructions, nor has he complained of their
omission. See St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 530 (Tex. 2003) (applying legally correct
definition of joint enterprise, in lieu of definition submitted by trial court, where defendant objected
to trial court's definition). In Jackson, the supreme court seems to suggest that the submission of
physical impairment without proper accompanying instructions might expand the scope of evidence
we consider in our sufficiency review. Jackson, 116 S.W.3d at 773-75 (struggling with factual
sufficiency review where charge left open possibility that jury might have awarded physical
impairment damages under other damage elements and suggesting that, absent proper instruction,
evidence bearing on other damage categories could support physical impairment award). We need
not explore any possible implications of the charge form for our no evidence review because Brittain,
through his cross-point, also preserved error regarding the legal sufficiency of the evidence
supporting the trial court's submission of physical impairment. 
2. To this extent, we agree with Brittain that we must consider only losses unique to physical
impairment.
3. Patlyek suggests that Brittain "viewed all Plaintiff's testimony as representative of a past
physical impairment claim," suggesting some form of concession on the part of Brittain. We do not
view the record as supporting this proposition. In the portion of the record that Patlyek cites for this
proposition, Brittain's counsel is cross-examining Patlyek to clarify that Patlyek is not seeking any
future medical expenses, future impairment, future loss of earnings, or other future damages. We
do not view this questioning as tantamount to an admission that Patlyek was entitled to past physical
impairment or any other past damages.
4. Patlyek's pain and inability to sleep related to his injury appear to be compensable only as
pain and suffering, and not as physical impairment. In Harris County v. Smith, the supreme court
affirmed our sister court's finding that no evidence supported the submission of physical impairment
with regard to a plaintiff who claimed (1) she experienced pain in her abdominal area following an
accident; (2) this pain, as well as back pain, caused her sleep problems; but (3) these problems
ceased after about seven months. 66 S.W.3d 326, 331(Tex. App.--Houston [1st Dist.] 2001), rev'd
on other grounds, 96 S.W.3d 230, 232 (Tex. 2002) (objection that damage elements had no support
in the evidence "was also correct"). 


 As for Patlyek's weakness and tingling in his shoulder and arm, he does not suggest how
these injuries would impede his non-work activities. In contrast to plaintiffs who are unable to walk,
Schindler Elevator Corp. v. Anderson, 78 S.W.3d 392, 412-13 (Tex. App.--Houston [14th Dist.]
2001, pet. abated), who have lost virtually all strength in one arm, Sharm, Inc. v. Martinez, 900
S.W.2d 777, 784 (Tex. App.--Corpus Christi 1995, no writ), or who cannot eat or communicate
with others, Ramirez v. Fifth Club, Inc., No. 03-03-00241-CV, 2004 Tex. App. LEXIS 3751, at *44
(Tex. App.--Austin Apr. 29, 2004, no pet. h.), Patlyek's complaints regarding his shoulder and arm
were confined to problems he experienced in response to strenuous work on a jackhammer or in
laying heavy pipe. Moreover, losses related to Patlyek's inability to work are compensable, if at all,
as lost wages or lost earning capacity, and might have been recovered had Patlyek pleaded them
properly. Patlyek attempts to mask these deficiencies by characterizing his job as, in effect, a
recreational activity on the basis that he enjoys its physical nature. We are unaware of any authority
supporting the view that a lost earnings claim can be converted into a physical impairment claim
merely because a plaintiff testifies he or she likes a job, and we doubt Patlyek could do so here.
5. Brittain did not assert on appeal a challenge to the factual sufficiency of the jury's $6,000
award for past physical impairment.
6. The following is how the issue arose:


 [Patlyek's Attorney]: Physical impairment was not found. It was in my original
proposed charge to the Court. It just was left out of the more expansive proposed
charge of [Brittain]. I did not catch that until a minute ago in reading the final
one. There is no impairment blank or element of damage to recover for, although
it was pled for and there was evidence of it. I would simply ask at this time that
that [sic] request be heard by the Court.


 The Court: I'll hear your request. Would that go under question three?


 [Patlyek's Attorney]: It does. It would be a - it would be a C, and it's physical
impairment in the past.