

# NUMBER 13-23-00105-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CHRISTINE NICOLE TORRES,**                                                    **Appellant,**

**v.**

**STEPHANIE GARCIA, MAX GALVAN,**
**AND JUAN R. GARCIA,**                                                    **Appellees.**

---

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 8
## OF HIDALGO COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Chief Justice Contreras**

In this personal injury case, appellant Christine Nicole Torres challenges the trial

court's judgment awarding damages issued in favor of appellees Stephanie Garcia and

Max Galvan.[1] By two issues, Torres argues that there was legally and factually insufficient evidence to support (1) the jury's causation finding and (2) the jury's award of $9,000 for past and future physical impairment. We affirm.

## I.  BACKGROUND

This appeal arises from an automobile accident which occurred in McAllen on December 29, 2019. Garcia testified that on the day of the accident, she and Galvan, her fiancé, were on their way to a barbeque at her parents' house. As Garcia turned right at a stop sign in her parents' neighborhood, Torres crossed into oncoming traffic and collided with Garcia's vehicle. Torres gave conflicting testimony about why she was driving on the wrong side of the street and whether her vehicle was stopped at the time of the collision. According to Torres, she had just come out of her parents' house to take the trash out and was in the process of parking the car in front of the house. On cross examination, Torres confirmed that during a deposition in May 2021 she said that she spilled coffee in her lap right before when the collision occurred. Garcia and Galvan sued Torres, alleging negligence and pleading for recovery of damages for injuries they allegedly suffered following the accident.

Garcia testified that the impact caused her head to "whiplash" back and strike the headrest. She called the police after the accident. She acknowledged that she told Torres, the responding officer, and Galvan that she was "fine" immediately after the accident, but she testified that after arriving at her parents' house later in the afternoon, she had a debilitating headache and stiffness in her neck. She said that the pain and stiffness

---

[1] The trial court's judgment also awarded damages to Garcia's father, Juan R. Garcia, who owned the car driven by Garcia. Torres does not challenge that ruling on appeal.

became so great that she did not sleep well and she "couldn't even get up" the next day. The day after the accident, Garcia called in sick to work and went to see a chiropractor with Galvan.

Garcia worked as the head dental assistant at a dental office. When asked what effect the pain had on her ability to work and her "activities of daily living," Garcia testified:

> [T]he stiffness was [i]n my neck, the pain. So even, like, looking down to do surgeries, which I love doing—you know, the pulling out the teeth and all those were my things to do there at the office. So doing that motion for, you know, a period of time, you know, it'd start hurting. So I couldn't assist the same way. I couldn't do certain procedures. So—I mean, thankfully, you know, I have the office where I've been there—and I've been there for a long time—you know, [they made] a little exception . . . . They ended up moving me to the front which is paperwork and computer work.

Garcia further testified that she still assists with surgeries when the office is short-staffed, which triggers the pain in her neck, and continues to visit a chiropractor.

Galvan testified that the impact injured his lower back, and the pain radiated down to his glutes. Galvan admitted that he could not remember the level of pain he felt after the accident but that "it was very uncomfortable, and it just made things a little bit harder for me as well as my fiancée." He was able to continue his job as a customer service representative; however, after starting a new position as a wind turbine technician in Wisconsin in March of 2022, he said he now feels "that same pain" in his lower back. Galvan testified that his new job involves "climbing wind towers about 200 feet up in the air" with "about 50 pounds worth of gear and equipment." He testified that he has subsequently started seeing a new chiropractor in Wisconsin for the pain.

When asked how the accident made life harder for him and Garcia, Galvan stated "Just, like when we were going through the pain, anything; sleeping, getting up, walking,

3

even exercising. You know, just basic things that, you know, I wanna do without feeling pain, you know, just our everyday routine." Galvan also testified that "he's a physical guy" and "do[es] extracurricular things" outside of his job. He also said that since the accident he tries not to work out "as much" because he does not want to hurt himself.

Galvan also testified that he was involved in two other accidents that took place in 2017 and 2020. The accident in 2020 was "a little fender bender" which did not affect his back. The accident in 2017, however, also injured his back. Galvan sought treatment after both accidents from Ricardo Jose Luna, the same chiropractor that he went to see after the accident in 2019 in this case. Galvan testified that after the treatment he received from Luna in 2017, he "was doing great," able to "work out, and do the things [he] wanted" again and did not suffer from pain. After the accident in 2019, he continued to feel pain after "doing physically demanding things" such as "helping friends move sofas" even after his physical therapy treatment with Luna.

Luna, a licensed chiropractor with fifteen years of experience, testified as the appellees' expert witness. He explained to the jury that his practice sees "[f]ifty to a hundred" patients a week and he often treats patients involved in automobile accidents. His treatment includes "physical therapy," "adjustments," "hot[ ]packs/cold packs," and "electricals." He also explained that he refers patients out for medications and MRIs depending on their symptoms. Luna treated both Garcia and Galvan the day after the accident. He testified that Garcia sought treatment for neck pain and attended sixteen sessions of physical therapy, and Galvan sought treatment for back pain and attended seventeen sessions of physical therapy. Luna testified that both were "compliant" with his instructions.

4

On direct examination, appellees' counsel admonished Luna to only provide opinions "based upon reasonable medical probability."[2] Luna diagnosed Garcia with, among other things, "[m]uscle strain, sprain, muscle spasm"; "cervicalgia"; "[c]ervical sprain, strain"; "cervical lordosis"; "cervical radiculitis"; "[r]adiculopathy"; and "cervical disc derangement."[3] Luna diagnosed Galvan with "[c]ervical pain, sprain/strain, thoracic pain . . . lumbar pain . . . sprain/strain on the low back, lumbar disc derangement"; "[myo]spasms"; and lumbar radiculitis. Luna explained that because Garcia's and Galvan's pain persisted, he ordered MRIs for them. After Garcia's MRI results, Luna diagnosed her with "C-4, 5, posterior 1.5[-]millimeter disc protrusion."[4] He further testified as follows:

[Counsel]: And so[,] with this cervical disc derangement and the cervical sprain/strain which you then confirmed with the MRI; what is your opinion based upon medical probability as to what was the cause of this?

[Luna]: The accident.

[Counsel]: Okay. If I were to suggest or to tell you that Ms. Garcia had difficulty in her work as a medical assistant, looking down and helping patients, is that something that you would find to be

_____

[2] The exact testimony was as follows:

[Counsel]: I hate to preface every question with, based upon reasonable medical probability, so I'm gonna ask you this, Dr. Luna. I would ask that you provide opinions only if you can provide those opinions based upon reasonable medical probability, okay? I don't want maybe's or possibly's [sic]. I only wanna hear opinions from you that are based upon reasonable medical probability, okay?

[Luna]: Yes, ma'am.

[3] Medical records showed Luna also diagnosed Garcia with thoracic pain, lumbar pain/lumbago, lumbar sprain/strain, and myospasms.

[4] Luna was cross-examined on his experience and qualification to interpret the result of the MRIs. Luna admitted that he is not a radiologist or otherwise certified to interpret MRIs and clarified that the MRIs come back with the radiologist's interpretation and results. He testified that he uses the radiologist's findings to confirm his diagnoses.

5

> consistent with the treatment and diagnosis and observations that you had, or inconsistent?

[Luna]:     Consistent.

After receiving Galvan's MRI results, Luna confirmed Galvan had a protrusion in his L-4 and L-5 disc. Luna also concluded that the 2019 accident caused this protrusion because it was not present in Galvan's MRI taken after the 2017 accident. Finally, Luna testified that based on Galvan's injuries, it was likely that his job as a wind turbine technician could exacerbate the pain in his lower back.

Rosendo Sandoval, a witness to the accident, was the last witness to testify. Sandoval owns his own landscaping business and was working outside Torres's parents' house the day of the accident. He testified that Torres was driving on the wrong side of the road but "it looked like [Torres] was going to move in and park." He testified that he saw Garcia roll through the stop sign. He also said that Torres's father, "Mr. Barrera," was one of his clients, and that he had been working for Mr. Barrera for about three months prior to the accident. He no longer worked for Torres's father at the time of trial. There was conflicting testimony about whether Sandoval talked privately with Mr. Barrera and Torres before the police arrived.

The jury found Torres eighty percent liable and Garcia twenty percent liable. They awarded $63,330 in total damages to Garcia and $55,020 in total to Galvan. Specifically, the jury awarded Garcia $8,330 for past medical care, $25,000 for future medical care, $10,000 in past pain and suffering, $15,000 in future pain and suffering, $2,500 in past physical impairment, and $2,500 in future physical impairment. They awarded Galvan $8,520 for past medical care, $25,000 for future medical care, $7,500 in past pain and

6

suffering, $10,000 in future pain and suffering, $2,000 in past physical impairment, and $2,000 in future physical impairment.

Appellant filed a motion for new trial or remittitur and a motion for judgment notwithstanding the verdict. The court denied both motions, and this appeal followed.

## II.    DISCUSSION

Torres argues that there was legally and factually insufficient evidence to establish causation.[5] *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (stating that causation is an essential element of a negligence claim).

## A.    Preservation of Error

We first address appellees' arguments that Torres waived her complaints because she failed to adequately brief the issues. *See* TEX. R. APP. P. 38.1(i); *Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 783 (Tex. App.—Dallas 2013, no pet.) ("The failure to provide appropriate record citations or a substantive analysis waives an appellate issue."). By her first issue, Torres argues that there was legally and factually insufficient evidence to support the jury's implicit finding as to causation because Luna's testimony was "conclusory" and "textbook *ipse dixit*," and was therefore insufficient to establish that the car accident caused appellees' injuries. Appellees argue that Torres waived this issue because she failed to explain how Luna's testimony was "conclusory," did not quote

---

[5] In her brief, Torres's first issue is entitled: "There was legally and factually insufficient evidence of Plaintiffs' past and future medical expenses." However, Torres does not dispute Luna's testimony about the reasonableness of appellees' past medical expenses or his estimates of appellees' future medical expenses. *See Pilgrim's Pride Corp. v. Cernat*, 205 S.W.3d 110, 121 (Tex. App.—Texarkana 2006, pet. denied) ("[T]o recover future medical expenses, a plaintiff is required to show there is a reasonable probability that medical expenses resulting from the injury will be incurred in the future and then show the reasonable costs of such care." (citations omitted)); *Walker v. Ricks*, 101 S.W.3d 740, 746 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) ("To recover for past medical expenses, the plaintiff must show "that such expenses were reasonably necessary for the plaintiff to incur as a result of her injuries." (citations omitted)). Instead, she merely argues that the evidence was "insufficient to establish causation."

7

specific testimony from Luna, and did not "present[] a sentence-by-sentence analysis of why such testimony is conclusory." Regarding Torres's second issue, appellees contend Torres "only conclusor[il]y asserts that no evidence or insufficient evidence supports the jury determination of physical impairment damages" and that she "failed to inform the trial court of what kind of evidence was necessary to establish such damages."

Throughout her brief, Torres provided legal authority for her arguments and cited extensively to the record. She quoted a portion of Luna's testimony as an example of his allegedly "conclusory" testimony, and she cited to numerous other examples in the record. She made detailed arguments alleging why the evidence at trial and appellees' testimony did not show evidence of past and future physical impairment. Appellees' assertion that Torres must analyze Luna's testimony line-by-line to illustrate her argument is misplaced because the rule does not require such strict requirements to preserve an issue. *See* TEX. R. APP. P.38.1(i). Further, "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) (citation omitted) (noting further that "appellate courts should reach the merits of an appeal whenever reasonably possible").

Appellees also argue that Torres did not preserve her first issue because her objection at the trial court did not comport with the argument she now raises on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Appellees argue that Torres "objected to Dr. Luna's testimony because it was conclusory 'because of its lack of foundational data,'" and not that "Dr. Luna only presented '*ipse dixit*.'" However, Torres stated in both her post-judgment motions that Luna's testimony was "legally and factually insufficient evidence to support the jury's

8

damage findings" because it was, among other things, "conclusory and speculative" as "he offer[ed] only his word that the bases offered to support his opinion actually exist or support his opinion." This is what *ipse dixit* means. *See Baylor Coll. of Med. v. Davies*, 599 S.W.3d 323, 329 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (first citing *Windrum v. Kareh*, 581 S.W.3d 761, 769 (Tex. 2019); and then citing *Ipse dixit*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

We conclude that Torres preserved her issues for our review. Torres sufficiently briefed the issues and her objection to the jury's causation finding comports with her argument on appeal.

## B.     Standard of Review & Applicable Law

In a legal sufficiency review, "we consider whether the evidence at trial would enable a reasonable and fair-minded fact finder to reach the verdict under review." *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *see City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). We consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 827.

> Evidence is legally insufficient to support a jury finding when (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact.

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017) (citation omitted); *see City of Keller*, 168 S.W.3d at 810.

9

In a factual sufficiency review, "we consider, weigh and examine all of the evidence which supports or undermines the finding." *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 770 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). A party attacking the factual sufficiency of an adverse finding must demonstrate on appeal that the adverse finding is "so against the great weight and preponderance of the evidence that the judgment should be set aside." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Under both sufficiency standards, "the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony." *Williams v. State*, 240 S.W.3d 293, 297 (Tex. App.—Austin 2007, pet. ref'd).

## C.    Analysis

Torres argues that appellees' diagnoses—"cervicalgia, cervical and lumbar sprain/strain, protruding or bulging cervical and lumbar discs, and cervical and lumbar radiculitis"—are injuries not within the common knowledge of jurors, and thus, were required to be explained with expert testimony. She then argues that "Luna provided *no* explanation of *how and why* [appellees'] complex soft-tissue injuries that generated their medical expenses were caused by the minor forces in this car accident." Torres does not dispute that Garcia and Galvan's testimony is sufficient to establish causation; rather, her argument is that an expert was required to establish causation with respect to their injuries and that Luna's testimony was "conclusory."

Expert testimony is generally necessary to establish causation of medical conditions outside the common knowledge and experience of lay persons. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). To constitute evidence of causation, a medical

expert's opinion must rest in reasonable medical probability. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995). "[T]hat is, it must be 'more likely than not' that the ultimate harm or condition resulted from such negligence.'" *Windrum*, 581 S.W.3d at 778 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)). Further, "it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Coastal Transp. Co. v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)).

Assuming without deciding that expert testimony was required to establish causation in this case, we turn to Luna's testimony.[6] Luna testified that he assigned Garcia and Galvan exercises for their pain, treated them in sixteen and seventeen physical therapy sessions, respectively, and ordered MRIs to confirm his diagnoses. Luna defined the more complex diagnoses for the jury including "cervicalgia," "cervical lordosis," "cervical radiculitis," and "radiculopathy." He testified unequivocally that, based on a reasonable medical probability, Garcia's and Galvan's pain and injuries were caused by the car accident. Luna's testimony was based on his treatment of appellees, the proximity of their symptoms to the accident, their MRI results, and his experience treating hundreds of other patients. We conclude that Luna's testimony was sufficient to prove the causation element of Garcia's and Galvan's injuries. *See Hunter v. Tex. Farm Bureau Mut. Ins.*, 639 S.W.3d 251, 264 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding

---

[6] Neither party disputes that Luna was designated as an expert in this case.

11

that expert testimony did not establish that plaintiff's injuries were caused by car accident because the doctor's testimony about causation was "couched" with terms such as "could be" and "consistent with" and "[did] no more than suggest it is possible that the accident caused [plaintiff's] conditions"); *see also Simpson v. Garcia*, No. 04-23-00012-CV, 2024 WL 104285, at *1, *4–5 (Tex. App.—San Antonio Jan. 10, 2024, no pet.) (mem. op.) (holding that an expert's testimony was not speculative and could support jury's award for future medical expenses because his testimony was based on his experience as a pain management specialist, treating other patients, and appellant's MRIs); *Rangel v. Ledgister*, No. 02-23-00319-CV, 2024 WL 1670894, at *5, *8 (Tex. App.—Fort Worth Apr. 18, 2024, no pet. h.) (mem. op.) (holding that plaintiff's doctor's testimony was sufficient to establish that car accident caused plaintiff's future medical expenses because doctor's testimony was based on his examination of the plaintiff and reviewing the plaintiff's medical records).

Torres contends that the record indicates the accident was minor. She points to (1) Garcia's testimony that she stopped at the stop sign and had "barely taken off" when she made the right turn that ultimately led to the collision, (2) Garcia's testimony that she was not "driving too fast" before the impact, (3) the police incident report which stated that no injuries were reported and estimated that there was less than $1,000 in property damage, (4) the fact that airbags in both vehicles were not deployed, and (5) the fact that appellees reported they were "okay" immediately after the accident. She also argues that "[p]hotographic evidence showed minimal vehicular impact" and "[t]he cars impacted a very short distance from the stop sign where Garcia had just previously come to a complete stop."

12

While some evidence may show the accident was minor, the jury was free to weigh the evidence and the credibility of the witnesses at trial. *See Williams*, 240 S.W.3d 293, 297–98 ("The jury may believe all, some, or none of any witness's testimony." (citations omitted)); *cf. Hunter*, 639 S.W.3d at 263–64 (upholding jury's award of zero damages because jury could have reasonably disbelieved the plaintiff's doctor's testimony); *Walker v. Ricks*, 101 S.W.3d 740, 748 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (same). For example, Garcia testified that, while she felt fine immediately after the accident, she felt pain later in the day that was so debilitating she could not attend her family's barbeque, sleep, or go to work. While the police report indicated that there was less than $1,000 in property damage, other evidence showed that Garcia's car was towed and sustained over $3,000 worth of damage. Ultimately, the jury was free to weigh the evidence, including the testimony from Torres, Garcia, Galvan, Luna, and Sandoval, the images of the cars post-accident, the police report, and the appellees' medical records to determine the seriousness of the accident. *See Williams*, 240 S.W.3d at 297.

We conclude that there is more than a scintilla of evidence to support the jury's finding of causation. *See Antonov v. Walters*, 168 S.W.3d 901, 908 (Tex. App.—Fort Worth 2005, pet. denied) ("Anything more than a scintilla of evidence is legally sufficient to support the finding."). We further conclude that the evidence supporting causation is not so weak as to render the award clearly wrong and manifestly unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we hold that legally and factually sufficient evidence supports the jury's causation finding for Garcia and Galvan. *See Hunter*, 639 S.W.3d at 264, 267; *see also Simpson*, 2024 WL 104285, at *4–5. We overrule Torres's first issue.

13

**D.    Past and Future Physical Impairment**

By her second issue, Torres argues that there was legally and factually insufficient evidence to support the jury's awards for past and future physical impairment because there was "no evidence" at trial of Garcia's and Galvan's physical impairment.

"Physical impairment, also called the 'loss of enjoyment of life,' encompasses the loss of the injured party's former lifestyle." *Brazos Contractors Dev., Inc. v. Jefferson*, 596 S.W.3d 291, 312 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). To receive damages for physical impairment, the plaintiff must show "(1) he incurred injuries that are distinct from, or extend beyond, injuries compensable as pain and suffering, loss of earning capacity, or other damages elements; and (2) these distinct injuries have had a substantial effect." *Id.*; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003). If, as here, the jury is not provided with a definition of physical impairment, a court may infer that the jury "rationally conclude[d]" that loss of enjoyment of life can be part of physical impairment. *Golden Eagle Archery*, 116 S.W.3d at 770. Additionally, if a jury "was instructed not to award damages for the same element more than once," then "an appellate court must presume that the jury followed these instructions" unless the record demonstrates otherwise. *Id.* at 771.

Examples of "physical impairments" held to be legally sufficient to support an award of damages include:

> difficulty eating and communicating with others; continuing inability to sleep due to sharp pains, plus inability to run, bicycle, participate in triathlons, and play with children; past inability to walk and future difficulties in running, standing, and climbing; inability to ascend or descend stairs or kneel and difficulty in standing for long periods of time; loss of seventy-five percent of strength in left arm, which subsequently contributed to plaintiff's falling,

14

breaking her leg, and being confined to a wheelchair; and difficulties performing yard work, car maintenance, and playing racquetball.

*Patlyek v. Brittain*, 149 S.W.3d 781, 787 (Tex. App.—Austin 2004, pet. denied) (internal citations omitted).

The evidence that supports appellees' awards for past and future physical impairment is as follows. For past physical impairment, Garcia and Galvan could not barbeque with Garcia's family immediately after the accident, and they experienced pain while "sleeping," "walking," "exercising," and during their "everyday routine." The medical records for both Galvan and Garcia stated that they "reported that the pain adversely affected [their] activities of daily living" and that their pain was aggravated by "strength related activities; weight bearing and prolonged sitting, standing, and gait, as well as difficulty sleeping secondary to pain." For future physical impairment, Garcia testified she can no longer assist in surgeries for long periods of time. Galvan testified that his pain has returned due to the physical nature of his new job. He also testified that "he's a physical guy" and "do[es] extracurricular things" outside of his job, but since the accident, he tries not to work out "as much" because he does not want to hurt himself.

In *Patlyek*, the jury awarded Patlyek $15,683.25 against Brittain for personal injuries sustained in a motor vehicle accident, including $6,000 for past physical impairment.[7] *Id.* at 783. As evidence of past physical impairment, Patlyek asserted that he experienced "pain when lifting, coughing, sitting, turning his head, or lying down"; "problems sleeping"; "weakness, tingling, and pain in his shoulder and arm that prevented

---

[7] Patlyek did not seek damages for future physical impairment. *Patlyek v. Brittain*, 149 S.W.3d 781, 786 (Tex. App.—Austin 2004, pet. denied).

15

him from fully performing his job"; and "restricted mobility in his neck that prevented him from turning his head left completely or quickly." *Id.* at 786. He also testified that the loss of his ability to participate in the physical nature of his job constituted a loss of the ability to participate in an activity he found enjoyable. *Id.* Patlyek did not specifically list hobbies or activities that he no longer enjoyed after the accident. *See id.*

The trial court granted Brittain's motion to disregard the physical impairment finding, and Patlyek appealed. *Id.* The court of appeals held that even though "most of the losses Patlyek cites as evidence of physical impairment appear indistinguishable from pain and suffering, mental anguish, or lost earnings damages," his "inability to turn his head to the left constitutes some evidence of physical impairment." *Id.* at 787–88. The court explained:

> Viewing the evidence in the light most favorable to Patlyek, as we must, he was unable to turn his head to the left completely or quickly until several months after December, when he had otherwise fully recovered from his injuries. This limitation on his mobility, moreover, was independent of the pain and weakness Patlyek experienced. Being unable to rotate one's head completely or normally would have an obvious impact on day-to-day activities, such as driving a car, responding to one's name when called, or any recreational activity involving movement of one's head. It is thus similar to impediments of such elemental activities as walking, eating, kneeling or standing that have been held to constitute physical impairment.

*Id.* The court further held that evidence of Patlyek's "inability to rotate his head [] for several months after the eight months in which he otherwise recovered from the accident," satisfied "the second requirement for recovering physical impairment damages, that the distinct loss be 'substantial.'" *Id.* at 788 (noting that "[a]bsent more specific guidance from the Texas Supreme Court regarding the meaning of the requirement that physical impairment damages be 'substantial,' we are reluctant to take the determination of

16

physical impairment damages from the jury on that basis alone"). Thus, the court reversed the judgment of the trial court and rendered judgment on the verdict that Patlyek receive $6,000 in past physical impairment damages. *Id.* at 790.

We may set aside the verdict for factually insufficient evidence "only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem. Co.*, 46 S.W.3d at 242. Here, Garcia and Galvan provided evidence that they were unable to sleep, walk, exercise, or go about their "everyday routine" without pain after the accident. And, as in *Patlyek*, Garcia and Galvan's inability to do the basic physical aspects of their jobs without pain, such as looking down, climbing, or carrying equipment, "would have an obvious impact on [their] day-to-day activities." *See id.* at 787–88; *see also Cowboys Concert Hall-Arlington, Inc. v. Jones*, No. 02-12-00518-CV, 2014 WL 1713472, at \*19–20 (Tex. App.—Fort Worth May 1, 2014, pet. denied) (mem. op.) (upholding an award for past physical impairment though "the majority of [appellee's] evidence of physical impairment appear[ed] indistinguishable from past pain and suffering and lost earning capacity"); *Bell v. Castro*, No. 04-11-00927-CV, 2012 WL 5874322, at \*4 (Tex. App.—San Antonio Nov. 21, 2012, no pet.) (mem. op.) (upholding an award for future physical impairment even though plaintiff "did not present evidence showing what tasks and activities he was unable to enjoy as a result of the accident" because plaintiff's doctor testified that plaintiff "would be restricted from lifting anything heavier than 10–15 pounds and from reaching overhead"); *Durham Transp. Co. v. Beettner*, 201 S.W.3d 859, 866 (Tex. App.—Waco 2006, pet. denied) ("Beettner's testimony that (1) the injury has caused him to experience pain while walking, (2) the injury has caused him to decrease his participation in athletics,

17

and (3) his symptoms have continued constitutes evidence which 'would enable reasonable and fair-minded people' to award damages for past and future physical impairment." (citations omitted)).

Further, while physical impairment must be "distinct from" other damages elements such as loss of earning capacity, mere evidence of difficulty accomplishing tasks may support an award of future physical impairment damages. *See Wal-Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 668 (Tex. App.—Dallas 2018, pet. granted), *aff'd as modified*, 553 S.W.3d 648 (Tex. 2018); *see also Day v. Domin*, No. 05-14-00467-CV, 2015 WL 1743153, at *4 (Tex. App.—Dallas Apr. 16, 2015, no pet.) (mem. op.) (finding that "evidence of inability to work or difficulty accomplishing work tasks may support an award of future physical impairment damages"). And, the jury was not asked to assess damages for loss of earning capacity or lost wages; therefore, there is no possibility that the award was duplicative in that regard. *See Golden Eagle Archery*, 116 S.W.3d at 772.

We conclude that there is more than a scintilla of evidence to support Garcia's and Galvan's damages for past and future physical impairment. *See City of Keller*, 168 S.W.3d at 810; *Antonov*, 168 S.W.3d at 908. The evidence supporting the jury's award in these categories is not so weak as to render the award clearly wrong and manifestly unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we hold that legally and factually sufficient evidence supports the jury's award of damages for past and future physical impairment.[8] *See Patlyek*, 149 S.W.3d at 787–88; *see also Cowboys Concert Hall*, 2014

---

[8] Torres argues in the alternative that this Court suggest a remittitur "because there was insufficient evidence to support the full amounts awarded by the jury for those elements." Because we conclude that there was sufficient evidence to support the jury's finding of causation and the awards for past and future physical impairment, we need not address remittitur. *See* Tex. R. App. P. 47.1.

18

WL 1713472, at *19–20; *Bell*, 2012 WL 5874322, at *4; *Durham Transp. Co.*, 201 S.W.3d at 866. We overrule Torres's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
5th day of July, 2024.